# Richmond.

## WILLIAMS V. BLAKEY, COM'R.

### March 9, 1882.

1. JUDICIAL SALE.—*Purchaser at* may be proceeded against by rule where he has failed to pay the purchase-money.

2. IDEM—*Deed—Estoppel.*—Commissioner. having been induced to execute deed conveying the property to the purchaser, by the latter's fraud or wilful misrepresentation, or by misrepresentation upon an honest mistake of fact as to the payment of the purchase-money, purchaser cannot rely on the deed as an estoppel, but may be proceeded against by rule to have the deed annulled and the property subjected to sale.

3. LIMITATIONS.—Code 1873, ch. 146, § 16, providing that suit to set aside voluntary conveyance must be brought within five years, refers to suits by creditors to annul voluntary conveyances by their debtor *to third persons* in fraud of such creditors' rights, and not to suit by commissioner to vacate a deed executed by him upon the ground of fraud or under the misrepresentations of the grantee.

4. CHANCERY PRACTICE—*Issue.*—A court will not award an issue in every case where the evidence happens to be conflicting, for if the court is satisfied it will not send the case to a trial at law.

5. IDEM—*Idem—General rule.*—An issue ought to be directed where the credit and accuracy of the witnesses are impeached, or where the evidence is so clashing as to render it necessary to weigh the character and credibility of the witnesses. or where the evidence is so equally balanced on both sides that it is doubtful which scale preponderates.

6. CASE HERE.—W, in 1883, at sale made by B, as commissioner under decree of court, purchased house and lot in F, and gave four bonds, each for $720, payable in one, two, three, and four years thereafter. Payment of all but the second bond is admitted. As far back as 1869, W insisted he had paid all, and was entitled to his deed. B insisted that the second was unpaid; but finally, in 1872, executed deed acknowledging receipt of all the purchase money, and conveying the property to W. In 1874, the bond was found in possession of H, a lawyer to whom, in 1855, it had been entrusted for collection. In 1877 B filed his petition in the suit wherein the decree of sale was rendered, praying for a rule against W to show cause why he should not pay this bond, &c. W filed

his answer, insisting the bond had been paid. Much documentary evidence and many depositions of conflicting nature in the case.

HELD :

1. Notwithstanding the execution of the deed to W by B, the latter is entitled, under the circumstances, to proceed against W by rule for the vacation of the deed, and the sale of the land to pay the bond, if unpaid.

2. Such proceedings are not barred by the statute of limitations.

3. In view of the conflicting evidence, and the nature of the issues involved, W is entitled to an issue out of chancery.

Appeal from decree of circuit court of Madison county, upon a rule awarded in the chancery cause of *Shirley* v. *Shirley, &c.,* against Charles Williams, at the instance of A. R. Blakey and another commissioner in that suit. Upon the hearing of the rule, which Williams answered, the circuit court pronounced against him a decree, from which he obtained an appeal to this court. Opinion states fully all the facts and proceedings necessary to a proper understanding of the case.

*J. B. Sener* and *Marye & Fitzhugh,* for appellant.

*W. O. Fry,* for appellee.

STAPLES, J., delivered the opinion of the court.

The appellant was the purchaser of a house and lot in the city of Fredericksburg, under a decree of the circuit court of Madison county, rendered in the chancery suit of *Shirley* v. *Shirley.* He executed to the appellees, Blakey and Early, commissioners making the sale, four bonds for $720 each, bearing date August 10th, 1853, and payable severally on the 10th of August, 1854, 1855, 1856, 1857.

The bond for the first instalment was paid in January, 1855. The bonds maturing in 1856 and 1857 were paid in May, 1861, under judgment and execution thereon. These

payments are conceded on both sides. The controversy relates exclusively to the second bond, which matured on the 10th of August, 1855, and the sole question is, whether it has ever been paid.

It appears that as far back as 1869 or 1870, the appellant claimed that there was nothing due upon his purchase, and that he was entitled to a deed from the commissioners. One of them, Mr. A. R. Blakey, who was charged with these collections, denied this, insisting that the second instalment, secured by the bond of 1855, had not been paid, but finally agreed, as he avers, with much reluctance, to make the deed to the appellant. Accordingly, a conveyance was executed in February, 1872, acknowledging the receipt of the purchase money in full, and Mr. Blakey accounted for the same to the parties entitled thereto.

Some time after this, about the year 1874, the bond in controversy was accidentally found in the possession of H. H. Wallace, of Fredericksburg, to whom it had been intrusted in the year 1855 for collection.

This discovery of the bond induced Mr. Blakey, as he says, to examine more carefully into the matter, and he became satisfied that the bond had not been paid, and that the appellee had committed a fraud upon him in demanding and obtaining the conveyance. Whereupon, in the year 1877 he and his co-commissioner, Early, filed their petition in the chancery suit of *Shirley* v. *Shirley*, which was still pending, setting forth the foregoing facts, and asking for a rule against the appellant to show cause, if any he could, why he should not be required to pay the amount due upon the bond of 1855, and in the event of his failure to do so, that the deed might be cancelled, and the land sold to satisfy the debt.

The rule was accordingly issued, the appellant appeared and filed his answer, controverting many of the statements made in the petition, insisting the bond had been paid,

and setting forth the facts of the case according to his understanding and recollection.

Depositions were taken on both sides, and a great deal of documentary evidence was filed, consisting of letters, memoranda, and accounts. Upon the hearing the circuit court rendered a decree holding the appellant liable for the second bond, vacating the deed of February, 1872, and directing a sale of the land to satisfy the amount due.

It is from that decree the appeal was taken.

It is insisted by the appellant that, by the execution of the deed to him by the commissioner, the subject-matter of controversy and the parties had passed beyond the control of the court; that it had no jurisdiction to proceed by rule, and Mr. Blakey's only remedy, if any he had, is by action on the bond in the common-law courts. In *Clarkson* v. *Read,* 15 Gratt. 258, it was held that where a purchaser at a judicial sale fails to pay his bonds for the purchase money, he may be proceeded against by rule, to show cause why the land should not be sold to satisfy the same, and upon that proceeding a decree may be rendered for a sale of the land. In that case Judge Daniel cited many authorities to show that a purchaser under a decree for the sale of the lands, though not a party to the suit, does by the act of purchasing submit himself to the jurisdiction of the court as to all matters connected with the sale, or relating to him in the character of purchaser.

If, therefore, in the present case, no deed had been executed to the appellant by the commissioners, it would be competent for the court to proceed by rule, for their benefit, to enforce the collection of the unpaid purchase money.

Clearly, if the commissioners, under the representation of the appellant, have improperly charged themselves with money never collected, the appellant still owes it, and it is difficult to perceive why the court may not compel him to complete his purchase, whether it be for the

benefit of the commissioners or of creditors or others interested in the funds.

In judicial sales, the court is regarded, in a certain sense, as owner and principal, and the commissioner as agent and officer. When the commissioner has accounted for the money without having received it, upon the most ordinary principles of justice the court ought to substitute him to its rights and remedies against the purchaser. *Cassamanger* v. *Strode,* 1 Sem. & Stu. Reports, 387.

At the time Mr. Blakey consented to be charged with this fund, he did so with the understanding that the error should be corrected if it should afterwards be ascertained that the money had not been received by him. Such being his contract with the court, he may justly claim the benefit of its process according to the recognized forms of proceeding, for the purpose of showing that the money was never in fact collected, and this throws upon the appellant the liability which justly attaches to him.

No injustice is done to the latter by this mode of proceeding. The petition sets forth all the facts with sufficient minuteness and particularity, and the answer of the appellant is as full and complete as a regular answer to a bill in chancery.

The only question is, whether the deed executed by the commissioner is an obstacle in the way of a proceeding by rule.

A single consideration is sufficient to solve that question. If, as charged by the appellee, the deed was procured by a fraud or wilful misrepresentation, or by misrepresentation upon an honest mistake of fact as to the payment of the purchase money, the appellant could not rely upon it as an estoppel. Every difficulty with respect to the remedy by rule is removed so soon as it is made to appear that the execution of the deed was due to a misrepresentation of the facts produced by the appellant himself. The court will

place the parties in the same situation that they were before the deed was executed. Any other rule would give to the appellant an undue advantage, derived from his own misconduct.

My opinion, therefore, is, that the court has jurisdiction in this case to afford such relief to the appellees as they may be justly entitled to under the evidence.

The next ground of defence is, that the proceeding is barred by the statute of limitation.

The 16th section of chapter 146, Code of 1873, is relied upon in support of this proposition. That section provides that a suit to set aside a' voluntary deed must be brought within five years. The most cursory examination will show that this statute refers only to suits by creditors to annul voluntary conveyances by their debtors to *third persons* in fraud of such creditors' rights. Here the proceeding is by creditors, if they may be so termed, to vacate a deed executed *by them to the appellant,* upon the ground of fraud or under the misrepresentations of the party to whom the deed is made. It is obvious, therefore, that the statute has no sort of application to the case.

We come, then, to the main question, is the decree of the circuit court right upon the merits?

After a very careful examination of the record, I am satisfied there ought to be an issue to be tried by a jury. Under such circumstances, it would, of course, be improper to enter into any discussion of the evidence. The principles which govern the courts in directing issues are well understood. The difficulty is in determining their application to particular cases. As was said by this court in *Hord's Adm'r* v. *Calvert et als.,* 27 Gratt. 49, 60, an issue will not be directed in every case because the evidence happens to be conflicting; for if the court is fully satisfied as to the evidence, it will not send the case to a trial at law; but, as a general rule, where the credit and accuracy of

the witnesses are impeached, or where the evidence is clashing and conflicting, rendering it necessary to weigh the character and credibility of the witnesses, or where the evidence is so equally balanced on both sides that it becomes doubtful which scale preponderates, an issue ought properly to be directed. *Ware* v. *Lamb,* 9 Gratt. page —, where the whole question is fully discussed. In 2 Story's E. J., section 1479, the author, quoting Mr. Blackstone, says : If any matter of fact is strongly controverted, the court is so sensible of the deficiency of trial by written deposition that it will not bind the parties thereby, but will specially direct the matter to be tried by jury. And the same course will be pursued where the question turns upon conflicting presumptions of fact from which the court is unable to deduce any satisfactory conclusion. 1 Danl. 416.

In the case before us the record contains a great mass of documentary evidence, with respect to which the court is more competent, perhaps, to pass a correct judgment than a jury. It also contains a great deal of oral testimony, the weight and value of which depends in a great measure on the intelligence of the witnesses and the accuracy of their recollection and means of observation. It is very true the appellant was not examined as a witness, although it was eminently proper and desirable that he should have testified. Whether this failure was due to the fact that his counsel regarded his answer as sufficient for his protection, or because the appellant was unwilling to subject himself to the ordeal of a public cross-examination, does not appear.

It is not for us to attribute to him any such unworthy motive as that suggested by the latter supposition, although so charged by counsel. Resting the case upon the pleadings and proofs in the cause, in the absence of the appellee's testimony, I must confess that I have been unable

to arrive at any satisfactory conclusion upon the merits. It seems to me to be a case eminently proper for a trial by jury, where both parties will have an opportunity of being heard fully.

There is another reason rendering an issue proper :

Although the appellees are entitled to proceed by rule, as has been already stated, the proceeding is, in effect, an action on the bond, which was executed and matured more than twenty-two years before the petition was filed in this case. The appellant relies, not only upon direct evidence tending to prove a payment, but upon all the presumptions arising from the long lapse of time and the staleness of the demand. Although a court of equity may have jurisdiction to administer final relief, I think upon these issues the appellant is entitled to a trial by jury, where the tests of a public cross-examination may be applied, and the whole question be more satisfactorily investigated than it can be in this court.

The decree of the circuit court is therefore reversed, and the case remanded for an issue accordingly.

DECREE REVERSED.